JUSTUS P. STEVENS *against* THE STATE.

APPEAL *from Pulaski Circuit Court.*

Where on an indictment for gaming, found and tried at *March* term, 1839, the evidence was, that the offence was committed within a year previous to the first day of *January*, 1839, if the jury found a verdict of guilty, the verdict will not be disturbed because the proof was not explicit that the offence was committed within a year previous to the finding of the indictment.

The jury were authorized to draw this inference, and having done so, it is conclusive.

Where the evidence as to the offence in such a case was that the accused sat behind a table commonly called a faro table, dealing or drawing cards from a box, and using pieces of bone for carrying on the game—that no money was used, nor did the witness know whether he was playing for money or amusement—a conviction on this evidence will not be disturbed.

The jury had a right to infer that the checks were valuable, or represented money.

This was an indictment for dealing faro. The first count charged that Stevens, on a day certain, with force and arms at, &c., and within the jurisdiction of the court, unlawfully kept and exhibited a certain gaming table, commonly called a faro table, contrary to the form of the statute, &c. The other counts charged the same offence more fully. Stevens pleaded not guilty; and the case was tried by a jury who found him guilty, and assessed a fine of one hundred dollars, for which, and the costs, judgment was entered. Stevens then moved for a new trial on the grounds that the verdict was contrary to law and to evidence, and that there was no proof that any gaming was carried on by him, or that any money whatever was bet, won or lost, at the game played by him. This motion was overruled, and thereupon he filed his bill of exceptions.

The bill of exceptions states all the evidence given in the case, which was, that the only witness sworn stated that it was so long since, that he remembered but little about it; that he had seen the defendant at the county of Pulaski, within one year previous to January 1st, 1839, at a table commonly called a faro table, but that he did not know whether he was keeping and exhibiting it or not; that he did not know whether they were playing for amusement or money;

that they used pieces of bone, but he did not know whether they were of any value or represented money; that he did not know whether Stevens was keeping the table or not; that he was sitting behind it drawing the cards out of a box, which he believed was called dealing; and that he saw no money played for, or paid in or out. This was all the evidence.

PIKE, for appellant:

The bill of exceptions was taken in time, for it was taken so soon as the motion for a new trial was overruled. It shows conclusively that the verdict was not warranted by the evidence. The indictment was found at March term, 1839, which commenced on the first Monday of March, 1839. To that day the finding of the indictment is, by law, referred. Now in order to convict, the offence must have been committed within one year previous to the said first Monday of March, 1839, and the evidence is, that it was committed within a year previous to January, 1st, 1839. It is necessary for the State, in every criminal case, to show, positively, that the offence was committed within the time prescribed by the statute of limitations. Thus, in *Rex vs. Phillips, Russ. and Ry.* 369, it was held, that on an indictment for high treason, on the 8 and 9 *W.* 3 c. 26, by one section of which it was provided, that no prosecution shall be made for any offence "against this act, unless such prosecution be commenced within three months after such offence was committed," it was incumbent on the prosecutor to show that the prosecution was commenced within three months.

The plea of the statute of limitations is not known in criminal proceedings, but the plea of not guilty, puts every thing in issue, and devolves upon the prosecutor the proof of every thing necessary to show that an offence has been committed, which by law is punishable. And when the time within which the prosecution shall commence is prescribed by law, it is incumbent on the prosecutor to prove, not only that the offence was in fact committed, but that it was committed within the time prescribed by law. On this ground alone, therefore, the judgment should be reversed.

There is, however, still another ground, and it is, that the testi-

mony does not show the commission of any offence whatever against the law.

The evidence shows that the defendant was at a faro table, dealing the cards, at which persons were playing with pieces of bone; but there is no proof whatever that they were playing for money, or any thing of value, or that defendant was dealing for the purpose of having gaming carried on.

The statute (*Rev. St. p.* 270, *sec.* 1) provides for punishing every person " who shall set up, keep or exhibit any *gaming* table or gambling device, commonly called, &c., adapted, devised, or designed for the purpose of playing any game of chance, or at which any money or property may be won or lost."

It cannot, we think, but be manifest, that in order to constitute an offence against this section, there must have been either a criminal act in exhibiting the table and dealing for money or something of value, or else a criminal act in exhibiting the table for the purpose of having money or something of value bet at the same.

To play any game for amusement, when no money or any thing of value is bet, is not gaming, nor any offence against the law. Undoubtedly it would be an offence for any person to set down and commence exhibiting a game for the purpose of having gaming carried on; but in such case the intention must necessarily be clearly proven, in order to convict.

What proof is there in this case, of any criminal act, or criminal intention? For aught that appears in evidence, the whole matter was mere innocent amusement. There is certainly no proof that any *gaming* was actually carried on, for the witness expressly stated that he did not know whether they were playing for amusement or for money. As little was there any proof of a criminal intention to induce gaming, for no language or acts of the accused are in evidence, showing such intention. No money was played for, or paid in or out.

The accused called on no person to bet, and for ought that appears in the evidence, might have been merely amusing himself.

To exhibit a faro table, means to set or stand at some such table, either playing or prepared to play the game of faro, for money or something of value. In order to convict any person of exhibiting a

Stevens *against* the State.

faro table, the circumstances constituting the offence must be proven, and of those circumstances the one most material and important is, that gaming was either carried on, or intended to be carried on. No proof of those facts, or either of them, appears in this case.

We therefore submit, that on these grounds, the judgment should be reversed.

CLENDENIN, *Contra:*

The first point in this case is one on the construction of the statute, or what is a sufficient setting up, keeping, or exhibiting of a gaming table, to bring it within the provisions of the said statute. It was argued on behalf of the State in the court below, and it is submitted to this court, that any keeping or exhibiting of any or either of the games or gaming tables prohibited, by which persons may be induced to violate the provisions of the section of the same act against betting, is such a setting up, keeping or exhibiting, which the law intended to prevent, and that it is not necessary that money should be won or lost on the said table. In this case there does not appear to have been any money won or lost, but that checks were bet by the persons assembled around the table, and the jury had a right to presume that the checks were the representation of money, or in the language of the statute, " valuable things." It is not conceded on the part of the State, that it is necessary that money should be won or lost on any of the gaming tables mentioned in the act, to bring the same within the meaning of the law: to *set up, keep, or exhibit.* To keep, is to hold—to retain in one's power or possession, &c.; and to exhibit, is to " offer or present to view—to present for inspection, to show, to manifest publicly." In this case, the gaming table appears to have been presented to view, displayed and manifested publicly—and therefore, without urging the fact that persons were betting checks, the law was manifestly violated, and the jury could not come to any other conclusion under the state of the facts.

This indictment was found under the provisions of the old statute, and the defendant, in accordance with the revised statute, elected to be punished under the act by which he was indicted.

The third point in this case is, that the exceptions were not taken

until after the verdict of the jury had been received, nor was the bill of exceptions signed until some time after. For authority on this point, *Lyon vs. Evans, Ark. Rep.* 361.

DICKINSON, *Judge*, delivered the opinion of the court:

The counsel of Stevens contends that the evidence does not sustain the finding, and that the proof ought to have showed positively that the offence was committed within one year previous to the first Monday of March, 1839, the time when the indictment was found, or that the statute of limitations, which requires the party to be prosecuted within one year after the commission of the offence, will come to his aid. We cannot see the force of this reasoning. The whole of the evidence was before the jury, and was such as to satisfy their minds that it was within the time prescribed by the statute. Such being the fact, we do not think the verdict, for that reason, ought to be disturbed.

The act under which the party is prosecuted, (*Steele and McCampbell's Dig.* 205,) subjects to indictment and punishment " any person who shall be guilty of keeping or exhibiting any gaming table commonly called A. B. C., or E. O., or roulette, or rouge et noir, or any other gaming table, or bank of the same or like kind, or any other description under any other denomination whatsoever, or shall, in any way, either directly or indirectly, be interested or concerned in any of the aforesaid gambling tables, bank, or games, either by furnishing money, or any other articles for the purpose of carrying on the same, being interested in the loss or gain of the said table or bank, or employed in any manner in conducting, carrying on, or exhibiting said table or bank."

The evidence is that Stevens was sitting behind a table commonly called a faro-table, that he was dealing or drawing cards from a box, and used pieces of bone for the purpose of carrying on the game. He simply states the facts, and it is for the jury to draw the conclusion whether it amounted to an exhibition or not, and it cannot be denied but that the evidence was such as clearly showed that Stevens, by dealing and drawing the cards from the box, was employed in conducting and exhibiting a gaming table or bank, and that the pieces

Stevens *against* the State.

of bone were used or furnished for the purpose of carrying on the same. It is not necessary, to constitute an offence under this act, that money should be furnished, for the furnishing of any other article is equally as criminal.

The jury, in determining upon the case, doubtless went upon the supposition that the bones or pieces of ivory used, spoken of by the witness, represented money, or some valuable thing, in carrying on the game. They were authorized to draw this inference from the facts proved, applying to them their experience and knowledge in the manner of conducting such games. Upon the whole, we see no good cause assigned for disturbing the judgment of the Circuit Court; the same is therefore affirmed, with costs, and the Circuit Court is hereby directed to execute its sentence pronounced in this case.