THE MISSOURI RIVER R. R. CO. v. JOHN F. RICHARDS.

8  101
70  798

. CLERK—SERVICES; *Measure of compensation.* The value of the services of a clerk of a corporation who attends the meeting of the board or directors, waits upon their deliberations, reduces the results of their action to proper form, under the responsibility attaching to his office of clerk, is not to be determined by the value of the mere clerical service of writing or copying so many pages or folios; and when the compensation or salary of such clerk or officer is not fixed by contract, or by law, he may recover such sum as he may by competent evidence prove his services to be worth.

2. EVIDENCE; *Cross-examination.* The refusal to permit a question asked on cross-examination to be answered is not cause for reversal, even though the question was one which was properly asked in the latitude allowed on cross-examination, where it clearly appears that such ruling could not have prejudicially affected the losing party.

3. WITNESS; *Competency of.* A person who has personal knowledge of the services rendered, and has a knowledge of the value of the services, and what was usually paid for such services in the east, is competent to testify what the services were worth, although he may not have known of any established price for such services in the vicinity where rendered.

4. IMPLIED CONTRACT; *Clerical services.* When the by-laws of a corporation provide that the officers shall receive such compensation for their services as the board of directors shall fix and allow, and the board has not fixed any compensation, a secretary who has rendered services is entitled to recover therefor, unless there was an understanding that he was to render the services without compensation.

5. JURY; "*General Knowledge.*" The jury have a right, in making up their verdict, to use their general knowledge, such as any man may bring to the subject.

*Error from Leavenworth District Court.*

In February, 1865, the corporators of *The Missouri River Railroad Company* filed their articles of association, or charter, in the office of the Secretary of State. February 24th the corporators met at the city of Leavenworth and effected a temporary organization. The defendant in error, *John F. Richards*, was chosen secretary. On the 8th of May, 1865, a meeting of the stockholders was duly held, and a board of directors duly chosen. The directors qualified on that day, and elected the usual officers of the corporation for the year. *Richards* was elected secretary. He entered at once upon the duties of his office, and held such position from that time until August 11th, 1866. May 25th, 1865, the board of directors adopted by-laws for the government of the corporation, one of which is as follows:

"9th. The officers of this company shall from time to time receive such compensation for their services as the board of directors shall fix and allow."

No compensation was at any time fixed by the board of directors for the services of the secretary of the corporation. *Richards* brought his action against the *Railroad Company*, claiming pay for services as secretary from January 31, 1865, to Aug. 11th, 1866, at rate of $2,500 per year; also, for $44.15 for money paid for books, stationery, etc., for the corporation while acting as secretary. The defense was a general denial. The case was tried at the March Term, 1868, and the plaintiff had judgment for $1,424.15. The questions raised on the admissibility of evidence, and on the giving and refusing of certain instructions, are fully stated in the opinion of the court. A new trial being refused, the *Railroad Company* brings the case here by petition in error.

*Hurd & Stillings*, for plaintiff in error:

1. Richards' labor as secretary required no more skill than that of any other clerk, and it required but little time or labor. Both witnesses were asked by plaintiff in error as to the value

of the time and labor bestowed as secretary in making the entries in the records, which questions were objected to, and the objections sustained by the court. This, too, was on cross-examination, on a question on which the witnesses had given their opinions, and on which plaintiff in error was surely entitled to questions that would inform the jury exactly on what basis the opinion was placed. Besides, it was the province of the jury to determine the question, if they found for him, whether they would allow compensation for the time and labor which he should be found to have bestowed as secretary, or whether they would allow for any supposed responsibility of the position. In overruling these questions the court erred.

2. Witness Chamberlain was allowed to testify, over objection of defendant below, to the value of Richards' services. The witness expressly stated that he did not know the value of such services here, but if he had any basis to place the value on at all it was some indefinite idea he had about the prices paid secretaries of railroad companies somewhere " down east." Even then he failed to make any distinction between the services of a secretary in the mere organization of the company, when scarcely any time is employed, and the value of such services where the road is in operation, requiring the entire time of the secretary. Such opinion of value was incompetent evidence. It does not come within any rule allowing the opinion of a witness to be given in evidence. 45 N. H., 370.

3. The court erred in refusing the instruction that Richards should be bound by the by-law that officers of the company should be governed in their compensation by the amount to be fixed and allowed by the board.

Defendant in error aided in adopting this by-law, and attested it as secretary. He helped to make a law to bind himself and all other officers, to receive no other compensation than such as should " be fixed and allowed " by the board, and then sues for services rendered by him, claiming that he is not bound by it. The evident intent of the law was that a rate of compensation should be fixed in advance. It can

hardly be claimed that the question of his compensation was not to be affected by this by-law, for such claim makes the by-law a nullity even as to the officers who enacted it to govern themselves.

A fair construction to put upon the transaction is that it was understood between Richards and the company, that whenever he intended to claim that any compensation should be paid he would ask the company to fix it in advance. The very least that he could do would be to apply to the board to fix or allow a compensation; and only on refusal to do so would he have a right to sue.

4. But the court did instruct the jury that it was the duty of the defendant to fix a reasonable amount, etc., to be paid plaintiff. This instruction was error. It was a peremptory order to the jury to find that the defendant had failed to do its duty in not prescribing a salary, which assumed that it was the agreement, implied from the by-law, that a salary was to be paid. The instruction being erroneous, a new trial should have been granted. 3 Gra. & Wat., 738.

5 The whole case shows that the services were voluntary, and sought by Richards for the laudable purpose of serving himself and the community in which he lived, and in such case no recovery can be had. 49 Pa. St., 118.

6. The court also instructed the jury that in assessing the amount of recovery they should take into consideration their own general knowledge.

A jury, in coming to a conclusion, should not divest themselves of common sense; but this instruction given in the broad terms in which it was, is well calculated to mislead the jury in such a case as this. If it was intended by the court to instruct them to take into consideration their general knowledge of the value of such services as those proved, then we submit that the proof shows that the only nature of the services was such that they could have no general knowledge as would be proper for them to take into consideration in such case. The instruction was calculated to mislead the jury. Besides, such instruction is not law. Starkie on Ev., 542.

7. The verdict was so clearly excessive on the proof as to the amount of services that it should have been set aside for that reason.

*Green & Foster, John L. Pendery,* and *Clough & Wheat,* for defendant in error:

1. There was no error refusing to permit the company, in cross-examining Richards' witnesses, to prove how much it would be worth for a clerk to do certain writing. It was not proper cross-examination. The witnesses had not in their examination in chief, said anything about that particular service. 1 Greenl. on Ev., § 445.

2. Unless there was an understanding between the parties that Richards was to render his services as secretary without compensation, he had a cause of action against plaintiff in error for the services he performed. 22 Cal., 556; 27 Vt., 436; 28 id., 401; 45 N. H., 370; 27 Conn., 181; 30 N. Y., 83; 1 Greene, (N. J.,) 255; 10 Bosw., 544; A. & A. on Corp., §§ 211, 317, 318.

The services having been performed, and nothing remaining undone except the payment to Richards of so much money as he was entitled to therefor, his action was properly brought. 7 N. Y., 436; 39 id., 380.

3. With reference to the instructions asked by the company to the effect that until the Board of Directors fixed Richards' salary, etc., he could not recover, see 17 N. Y., 491; 39 id, 377; 19 Vesey, 431; 4 Hurlst. & Norm., 642; 4 Sandf., 198.

Even if the company, by its directors, had a right to fix the amount Richards was entitled to, it should have done so in a reasonable time. 2 Pars. Cont., 47, 173; Chitty Cont., 337, 796. Which reasonable time is a question of law. 2 Pars. on Cont., 173.

4. There was no error in the instruction that the directors having failed to fix the salary of Richards, he was entitled to recover, there being nothing either in the pleadings or evidence showing any disposition on the part of the company or its directors to fix the amount of Richards' compensation, or

7—8TH KAS.

in any respect whatever to perform its duty in the matter of paying him for his services. 1 Cow., 109; 8 N. Y., 67; 28 Penn St., 224: 28 Ill., 424, 428.

5. As to the instruction that the jury could make use of their common knowledge, in assessing the damages, see 1 Greenl. on Ev., § 364, and notes; 32 E. C. L., 670; 4 Dowl. & L., 393; 18 Ill., 630; 37 Vt., 62; 4 Kas., 221.

The opinion of the court was delivered by

KINGMAN, C. J.: Richards was the secretary of the Missouri River Railroad Company from its organization till the road was completed and the cars were running. His services began on the 31st of January, 1865, and ended on the 11th of August, 1866, a period of about eighteen and one-half months. During all this time he was also a director in the company. He brought his suit against plaintiff in error to recover for his services as secretary at $2,500 per annum, and for moneys paid out for the company amounting to $44.15. A trial was had, and a verdict for $1,424.15 was returned, upon which judgment was entered. Various exceptions were taken during the trial as to the admission and exclusion of testimony, and as to the instructions given and refused. These will be considered in their order.

Richards as a witness for himself, having testified that he acted as secretary for the time claimed, and having produced the books kept by him during that time for the plaintiff in error, and stated that his services to the company as secretary were worth $2,500 per annum, was asked on cross-examination this question: " What would it have been worth for a clerk to do all the writing done by you in that book?" Upon objection made, this question was ruled out. It is obvious that an answer to the question would throw no light on the main question on which it touched. The mere clerical labor of writing a score or two of pages would be no criterion of the value of the services rendered in attending the meetings of the board, waiting upon their

1. Clerks; value of services.

deliberations, and exercising the skill necessary to reduce the results of their action to proper form, and under the responsibility attaching to an officer having the care of the proceedings of a corporation dealing in such large matters. As well might a lawyer who had testified to the value of his services in preparing a paper on a difficult and delicate point be asked what it would be worth for a clerk to do all the writing of that paper. By such evidence the jury would be liable to be misled from the true point to be by them determined. The witness had given no testimony as to the value of reducing the proceedings of the board to writing. It was but one of the many duties which he had discharged as secretary, according to the testimony. In the latitude permitted on cross-examination

2. Evidence; cross-examination.

such questions are frequently allowed; and the extent to which they are permitted must depend in a great measure upon the discretion of the court in each particular case. We can perceive no benefit that it would have been to the plaintiff in error to have had an answer to the question, even if the answer had been that it was worth but one dollar for a clerk to do the writing in the book. The keeping the record in the book was but a small item in the duties he had to perform, and the clerical part but a slight part of the value of his services in making the record. Still we think in the latitude allowed in cross-examination the question ought to have been answered, but cannot reverse a case for an error that could have had no influence in determining the real questions in issue. A similar question was asked Chamberlain and not permitted to be answered, and the same reasons apply to that question.

The next objection is that the witness Chamberlain was allowed to answer this question: "What were the services of the secretary of the defendant worth during the time these services were rendered?" The ground of the objection is,

3. Witness; competency; experts.

that the witness had not shown himself competent to testify on that subject. He had already testified that he knew what labor the plaintiff had performed for the company as secretary; what portion of his

time he was employed therein; that he (witness) was a mer-
chant doing business in Leavenworth, and part of the time
was partner of the plaintiff that he knew what salaries were
usually paid for such services in the east, but did not know
of any similar position in Leavenworth or vicinity. We think
he had shown enough to the court to authorize the question to
be answered. "It was more in the nature of a fact, than of
an opinion, although it belongs to that class of facts not capa-
ble of demonstrable certainty." *Anson v. Dwight*, 18 Iowa,
244. In a new and rapidly growing country, new enterprises
call for services not before known in the vicinity, and therefore
one must go of necessity elsewhere for criteria of their value;
and if none such can be found, the testimony of those con-
versant with similar kinds of services here must be admitted.
The witness was qualified under either reason.

The evidence showed that the by-laws of the company had
provided that the officers should receive such compensation for
their services as the board of directors should fix and allow, and
the board had not fixed or allowed any salary or compensation
whatever. It appears, however, that after he ceased to be sec-
retary, the president had refused to pay anything. It further
appears that all the time that Richards was secretary, he was
also a director. At the proper time the defendant asked a series
of instructions, most of which were refused. Under

4. Implied contracts.        various forms the instructions refused contained
these propositions: 1.–That to entitle the plaintiff to recover he
must prove that the board of directors of the Railroad Company
fixed a salary for the secretary under the by-laws. 2.–That such
salary must be so fixed, or plaintiff, before suit brought, must
have demanded of such board that his salary be fixed by them.
3.–That the plaintiff cannot recover for money paid out until
he has shown that it was so paid by the direction of the board
of directors. No one of these propositions contained in the
instructions refused is the law. The very formation of the by-
law by its terms indicated that some compensation was to be
fixed and allowed to the officers. The neglect to do so could
not be a bar to the recovery for such services. Had the board

made some allowance, however inadequate, it would probably have precluded the secretary from obtaining more than was allowed, at least for such time as he might serve after the salary was so fixed. The plaintiff below rendered certain services for which the plaintiff in error stipulated he should have such compensation as it, through its agents, should fix and allow. It cannot now escape its obligation by refusing to fix any sum. Nor does it devolve on the person rendering the service to demand that plaintiff in error shall perform a duty, which the laws of its own existence require should be done. Much less does it lie in the mouth of the plaintiff in error to say, "You cannot recover what is due you from us till you ask us to perform certain duties, with which you have nothing to do, and over which you have no control." Nor is the third proposition entitled to any more consideration. As secretary the plaintiff paid out for books, stationery, postage, telegraphing, etc., $44.15, necessary expenses incurred for the company in the performance of his duties as secretary. The company has had the benefit of this expenditure, and in good faith ought to refund it. Nor is there any principle of law that would prevent a recovery of it. A. & A. on Corp., §§ 237, 241, and authorities referred to.

The court instructed the jury that "the plaintiff could not recover for the services rendered under and to the first organization;" and that "if the services rendered for the defendant were performed by the plaintiff with the understanding that no compensation was to be paid therefor, he could not recover." The court also gave the following instruction:

"2d. That it was the duty of the defendant to fix by its directors a reasonable amount to be paid to plaintiff for his services as secretary, and having failed to do so, the plaintiff is entitled to recover therefor such amount as the evidence shows him entitled to."

The objection urged to this last instruction is, that the jury are peremptorily directed to find a verdict for the plaintiff; and this would have much force did not the previous instructions modify it. If the services were rendered with an understanding that they were gratuitous, then there could be no recovery.

If there is no such understanding, and one renders valuable
services for another, the law implies a promise to pay, and the
right to recover therefor is a matter of law; and this is what
the jury were told. Taking the instructions together, and the
jury had first to decide whether the plaintiff was entitled to
anything. If there was not an understanding that he was to
work for nothing, then he was entitled to recover. If this is
not a pure question of law, it would be difficult to conceive of
one. The error of the counsel has arisen from considering one
instruction alone. If, as the counsel claim, the services were
voluntary, and sought by Richards for the laudable purpose
of serving himself and the community in which he lived, then,
by the law as laid down, there could be no recovery; and it was
the peculiar province of the jury to determine that question.
There was much evidence to support the verdict on this point.
The by-law indicates plainly enough that some compensation
was to be paid to the officer. The simple fact that the by-law
fixed the means of determining how much should be paid shows
that something was contemplated. The fact that the president
promised to pay showed that Richards never considered that
he was to work for nothing. There was then that general
knowledge that the jury are presumed to possess of those mo-
tives that actuate the conduct of men where the motives are of
such general application as to become almost universal, and
that is, a settled indisposition to work for nothing, to make
special sacrifices of individual interest to accomplish an object
for the general good. We think the jury were fully authorized
to come to the conclusion that there was no understanding that
the work was to be done for nothing.

A part of the charge to which objection is made is this:
"The jury can take into consideration their own general knowl-
edge in assessing plaintiff's damages." The jury are always
in a case, as we understand the law, to use the knowl-
edge and experience they are supposed to possess in
common with the generality of mankind in making
up a verdict. As we understand it, this instruction goes no
farther than this. On questions of damages, the exercise of

5. Jury; may
use their
"general
knowledge."

this power is frequently one of the means of coming to a conclusion. Where witnesses are supposed to have a peculiar skill and judgment, upon a particular subject their opinions as to the amount of damages, are sometimes allowed to go to a jury for the purpose of supplying the supposed want of experience and knowledge of the jury. Where such witnesses are not produced, the jury must use their own judgment. We do not know of a single decision against this doctrine. It is not the knowledge that the jury have of this particular case that they are permitted by the court to apply, but that general knowledge they have in common with the rest of mankind. See 1 Greenl. on Ev., § 364, note, and authorities referred to. *Chicago v. Mayor*, 18 Ill., 360; *State v. Barrow*, 37 Vt., 62, where the court held that a jury might take into consideration their general knowledge that ale was an intoxicating liquor; *Parker v. Boston*, 15 Pickering, 209; *Murdock v. Sumner*, 22 Pick., 158. "That general knowledge that any man can bring to the subject a juror may use, but if he has any particular knowledge on the trade he must be sworn." 32 E. C. L., 670. The instruction under consideration goes no further.

A single question remains. It is insisted that a new trial should have been granted because the verdict was excessive. On this point we shall not review the evidence. The verdict seems large for the services shown, but it is abundantly sustained by the evidence, and the jury were authorized to consider the responsibility as well as the skill and labor bestowed by the plaintiff as secretary; and while we think the allowance liberal, we cannot see that it was not authorized, and we therefore cannot say that it was influenced by passion or prejudice, and cannot set it aside. The judgment is affirmed.

VALENTINE, J., concurring.

BREWER, J., not sitting.