# THE BALTIMORE & OHIO R. CO. *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Opening Street Across Railway Tracks—Cost of Maintaining the Crossing to be Borne by the Municipality—Removal of Switch in Bed of New Street.*

When a new street is opened across the tracks of a railway company under a municipal ordinance and it then becomes necessary to make and maintain planking between the tracks and rails, the cost of keeping the planking in good order as well as that of making it in the first place must be borne by the municipality, but the work is to be done by the railway company and in assessing damages for such street opening the jury should award to the railway company a sum sufficient to pay for the permanent maintenance and renewing of the crossing.

If a railway company has a switch standing in the bed of a street about to be opened across the tracks, the question whether it is necessary for the public safety that the switch be removed is one of fact for the jury and should not be determined by the Court although the expert evidence on the subject be undisputed

Appeal from Baltimore City Court (WICKES, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*Geo. Dobbin Penniman* (with whom was *H. L. Bond, Jr.*, on the brief ), for the appellant.

*Sylvan Hayes Lauchheimer* (with whom was *W. Cabell Bruce* on the brief ), for the appellee.

PAGE, J., delivered the opinion of the Court.

This is an appeal from the judgment of the lower Court, rendered on an appeal from the decision of the Commissioners for Opening Streets in the city of Baltimore, awarding damages to the appellant in the matter of opening Scott street.

It appears from the record that Scott street as it is proposed to be opened will cross the right of way of the appellant at a point where it maintains four lines of track, along and over which its trains, both passenger and freight, frequently pass in the transaction of the business of the company. The crossing will be sixty-six feet wide, and the same length along the tracks. The structural changes in the road way of the railroad company is shown in the evidence, and one of these is the necessity of having planking between the rails of each track, and also between the tracks, so that the planking shall extend the whole width of the street across the entire right of way. It was not disputed that the cost of putting down the planking must be borne by the city; but it was objected that the cost of maintaining the planking could not be considered in this proceeding in estimating the damages the appellant was entitled to recover. The Court sustained this objection and refused to permit evidence of the cost of maintaining the planking to go to the jury; and this constitutes the first and second exceptions. The Court also refused the appellant's fourth prayer, to the effect that "as there is nothing in the ordinance providing for the opening of Scott street, or the street opening proceedings, which requires the city to maintain the planking of the crossing over the railroad tracks, that the jury cannot rely on the assurance of the city, that it will continue to maintain the crossing, but must place in the railroad company's hands, such a sum as will enable it to always

maintain such crossing and renew it when necessary." The learned Judge when thus acting on the prayer, said, as appears from a note appended thereto, that "the duty to maintain undoubtedly rests on the city—it is a common law obligation not depending upon an ordinance. I do not think, however, it can be provided for in the way suggested in this prayer."

There seems to have been no dissent on the part of the counsel of the city, to the position taken by the Judge as to the obligations of the city. That view was in conformity to the well-settled principle laid down in this State and elsewhere; that when a new way is made across a railroad track, the company is entitled, not only to the cost of making such structural changes in its roadbed and track, as are thereby rendered necessary, but also that the maintenance of such changes shall be borne by those who construct the new road. *N. C. R. R. Co.* v. *Balto.*, 48 Md. 425; *Balto. City* v. *Cowen*, 88 Md. 454. The question here is how the cost of maintenance is to be secured—by awarding as damages a lump sum sufficient to cover the expense; or by the railroad's demanding compensation, each time it shall be compelled to make expenditures on that account?

It is assumed, therefore, as one of the conceded points in the case, and as matter of law, that the cost of maintaining the planking must fall upon the city; but it by no means follows therefrom that the city shall determine when and to what extent such renewals or repairs shall be made; or that its agents and employees may at any time enter upon the right of way and do the work. The appellant is engaged in an extensive transportation business; it employs many locomotives and cars and many of them pass over the crossing during all the hours of the day and night. The yard master of the appellant testified that there are on an average thirty freight trains each way daily; and there must be also many passenger trains. The safety of the public, as well that part of it interested in the transportation business of the appellant, as that which has occasion to use the crossing, would seem to make it highly important that when the bed of the railroad is to be interfered

with, it shall be by those who have expert knòwledge and experience in such matters, and special information as to the running of the appellant's locomotives.  It would seem to be perilous in the highest degree, if the agents of the city could at their pleasure enter upon the right of way, make changes, repairs and renewals to the planking as they should deem proper.  In the case of *The Central R. Co. v. P. W. & B. R. Co.*, 95 Md. 444, where there was a question analogous to this, between a steam railroad and an electric railway company and the electric company was held to the duty of bearing the expense of the crossing, this Court said "As it is the duty of the street railway company to keep the crossing in repair, so that it may be used *not only* by itself but by the steam road whose tracks the crossing in some measure interrupts, and as the steam road requires more durable and substantial construction than a street railway needs, it is altogether reasonable and proper that the decision of the questions as to when, in what manner and to what extent the repairs ought to be made, should be left to the engineers of the steam railroad company."

Of course we do not mean by anything we have said that the city will be relieved of its obligation to keep the crossing in good repair.  Such an obligation will remain unimpaired, although a primary duty to repair the planking rests with the railroad.  *Eyler v. Co. Commrs.*, 49 Md. 257.  Assuming now for the sake of argument, that the actual burden of making repairs of the planking will primarily fall upon the railroad, because of the necessity of the case, there is great difficulty, when considering the matter of compensation in making any distinction, in this case, between the cost of making the structural changes and the cost of maintaining them.  The cost of maintenance is a burden on the appellant, laid there for the benefit of the city, and the former is entitled to be compensated for it before its property is taken for the new use.  In *State Ex. Ry. Co.* v. *District Court*, 42 Am. & Eng. R. R. Cases, 241 (47 Minn. 24); it was held there was no distinction in respect to the compensation to be awarded in a case of this kind be-

tween "original construction and subsequent maintenance." The law requires the railroad company to maintain the planking and it must be assumed now, when damages are being *assessed* once for all, that this requirement of the law shall remain unchanged." In *Baltimore City* v. *Cowen*, 85 Md. 454, this Court citing *Chic., Mil. & St. P. Ry. Co.* v. *Milwaukee*, 97 Wis. 418, held that the company is entitled to compensation "for the cost of making and maintaining such structural changes in its roadbed and track," &c. *Old Colony R. R. Co.* v. *County of Plymouth*, 14 Gray, 162.

It was contended on the part of the appellee that damages to cover the cost of maintenance are "too remote, indefinite and speculative." But the mere fact that the amount cannot be fixed by proof with precision and certainty ought not to deprive a person of such redress as may be possible. As was said in *Lanahan* v. *Heaver*, 79 Md. 422, "when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to the amount, there can rarely be any good reason for refusing on account of such uncertainty, any damage whatever for the breach." Here, there can be no question that the planking will wear and decay and will occasionally need to be repaired and renewed. Nor is there any uncertainty, that the railroad company will incur the expense of having the work done and inasmuch as this burden is placed upon it for the benefit of the street, that the city must reimburse it. This burden primarily, under the circumstances as we have already pointed out, on the railroad, cannot depend upon contingencies, which may never happen. They are not problematical ; but absolutely certain ; and therefore constitute an element of damages. In cases for breach of contract, loss of profits, which depend on contingencies which may never happen are held to be too speculative, indefinite and remote to constitute a proper element of damages (*Abbott* v. *Gatch*, 13 Md. 314); but where the profits are fixed and certain the direct and immediate fruits of the contract, and are capable of ascertainment, they may be regarded in estimating damages. *Lanahan* v. *Heaver, supra;*

*B. & O. R. R. Co.* v. *Brydon,* 65 Md. 198.   In the present case there are no elements of uncertainty.   There must be the wear and tear and decay of the planking which will inevitably demand that it be repaired or renewed and that can be reasonably approximated, by those who have experience in such matters.   With these facts before them, it would not be difficult for the jury to fix an amount that will compensate the railroad for the expenses it will be compelled to incur on that account.

For these reasons we think the rulings in the first and second exceptions were erroneous, and the appellants' fourth prayer should have been granted.

The record further shows that a switch now stands in the proposed bed of Scott street on that part of it which will be used as the foot-way.   It was "put there for the benefit of the Baltimore and Annapolis Short Line Railroad Company," so that it can run its engines and cars on the tracks of the appellant.   There was evidence on the part of the appellant tending to show that its location in the sidewalk of Scott street would be dangerous and therefore if the street were opened it would become necessary to remove the switch; and that would require the rearrangement of the tracks in the yard of the Short Line.   The Court below having instructed the jury by the appellant's second prayer that the railroad was entitled to the cost of removing the switch if they found its present location is dangerous, was asked by the third prayer of the appellant to rule that by the "undisputed evidence in the case" it had been shown that the switch in its present location "will be an element of" danger and they must therefore allow to the railroad company such compensation as will enable it to remove it, &c.   This the Court refused to do, and we are therefore now to inquire whether the "undisputed evidence" in the case did establish its dangerous character.

The evidence on the part of the appellee was that of Mr. Fendall, the City Engineer and a former engineer of the appellant for twenty-seven years, he testified that in his opinion it would not be necessary to remove the switch; that "the

switch in a sidewalk would be an element of danger, but not so great an element of danger as would suggest its removal at that large expenditure of money; if the switch came in the driveway I would say its removal would be imperative." He further testified, that the necessity for the removal of a switch "depended altogether upon the amount of traffic in the shape of pedestrians that would pass over that section." The mere fact that it was an "element" of some danger is not sufficient. Any obstruction, however slight, may be in some degree an element of danger. It is only that kind of obstruction which might be dangerous to a person using ordinary care that ought to be removed from a highway. There could be no necessity for its removal unless it imperiled the safety of persons passing along the sidewalk and using proper care. That was a matter to be found by the jury, and could not be determined by the opinion of a witness, however skilled he may be. The plaintiffs' third prayer was properly rejected. There was no error in granting the appellee's first and second prayer and in refusing the appellants' 2½ prayer.

For error in the first and second exceptions and in refusing the appellants' fourth prayer, the judgment will be reversed.

*Judgment reversed and cause remanded.*

(Decided January 15th, 1904.)