OF THE

## STATE OF IOWA

AT

DES MOINES, SEPTEMBER 1912, AND
JANUARY 1913, TERMS,

AND IN THE SIXTY-SIXTH AND SIXTY-SEVENTH YEARS
OF THE STATE.

---

R. F. DOWNING, Appellee, v. FARMERS MUTUAL and FIRE
INSURANCE COMPANY, Appellant.

**Insurance:** ADJUSTMENT OF LOSS: BY-LAW PROVISION. The provision of
1  a by-law of an insurance company that in case of the failure of the
adjuster and insured to agree upon the amount of a loss and the
liability of the company, the matter should be referred to the direct-
ors of the company for final adjustment, does not make a decision of
the directors final; but the insured may appeal to the courts to
determine the liability of the association.

**Trial:** EVIDENCE TO BE CONSIDERED BY JURY: INSTRUCTION. A jury
2  must try a cause and base its verdict upon the evidence adduced.
It is not proper for them to consider their own observation and
experience with reference to the subject of the action, except in the

matter of weighing the evidence submitted; and in a case where it was claimed that the stock were killed by lightning, an instruction of the trial court that the jury might properly consider their own observation and experience, if any, with reference to losses of that nature was erroneous.

Weaver, J., dissenting.

*Appeal from Guthrie District Court.*—HON. J. H. APPLEGATE, Judge.

THURSDAY, DECEMBER 12, 1912.

ACTION to recover upon policy of insurance against loss or damage by lightning to certain live stock. There was a judgment for plaintiff, and defendant appeals.—*Reversed.*

*F. O. Hinkson* and *Sayles & Taylor,* for appellant.

*Milligan & Moore,* for appellee.

DEEMER, J.—Among the live stock covered by the insurance against lightning was a certain black mare which met its death on or about September 13, 1910. It is the claim of the plaintiff that the animal was killed by lightning, and that under the terms of the defendant's contract he is entitled to demand and recover thereon the sum of $100. The defendant admits the issuance of the policy, that it was in force at the time of the loss of the mare, that the mare was of the reasonable value of $100, and that proofs of said loss have been waived by the company. It further admits that it has rejected plaintiff's claim and refused to pay the value of the property alleged to have been lost. It denies, however, that the mare was killed by lightning, and pleads that said company is a co-operative insurance association, which is made up of the owners of the property insured by its policies, and that losses incurred are paid by assessment upon

said members in proportion to the amount of insurance carried by them, and all persons so becoming members are bound to observe and abide by the rules and regulations adopted for the government of its business. It is further alleged that by the regulations adopted by said company it is provided that, where a loss occurs, and the adjuster of the company and the insured fail to agree as to the amount of loss or damage suffered or concerning the question whether the company is liable at all, then the dispute must be referred to the company's board of directors for final adjustment, and that under this rule or regulation, the matter of plaintiff's alleged loss having become a subject of controversy between him and the adjuster, he was duly notified to meet with the board of directors on September 21, 1910, for the purpose of considering his claim. It is further alleged that plaintiff did attend said appointed meeting and presented his claim and his evidence and proofs of loss, upon consideration of which the board of directors voted to reject the same and refused to make payment demanded. Upon this showing defendant says that, plaintiff having elected to submit his claim to the board of directors, and said board having acted thereon and found no liability on part of the company, he is now estopped to maintain this action.

1. Concerning the merits of the question whether plaintiff's animal was in fact killed by lightning, we think sufficient to say that the testimony was such as to require its submission to the jury.

II. The by-law or regulation upon which the defendant relies reads as follows:

This association will not pay for stock killed by lightning, unless the loss has been brought to the notice of the nearest adjuster in five days, who shall immediately notify the secretary, and as soon as practicable, proceed to adjust the loss. If this cannot be done in a reasonable time, the owner shall have two disinterested parties examine the animal and if there are no positive marks of lightning on the outside, then examine under the skin, until marks are found, or it is proven

there are none, and report the facts to the adjuster. The president, secretary, and directors are the adjusters for the association. In case the loss exceeds $200.00 there shall be two adjusters called, one of whom shall be the president or secretary. Should the adjuster and the assured fail to agree as to the amount of the loss or damage or as to whether there is any liability at all, the matter shall be referred for final adjustment to a meeting of the board of directors, said meeting to be called by the president within ten days after notice of such disagreement.

It appears from the evidence that plaintiff, upon discovering the death of his mare, at once notified the company of his loss, and on the same day the president and secretary visited plaintiff's farm. After making some

1. INSURANCE: adjustment of loss: by-law provision.

investigation, they announced their conclusion that the loss had not been occasioned by lightning, and that the defendant was not liable therefor upon its policy. In this conclusion plaintiff refused to acquiesce and was told that a meeting of the board of directors would be held on Wednesday of the next week at which the claim would be considered. On the day named the directors met, and plaintiff appeared before them asserting his claim, some of his neighbors upon whose corroboration he relied were also present and made their statements; but the board, reaffirming the action taken by the president and secretary, denied the liability of the company and refused payment of the loss. It is now insisted for the defendant, that, plaintiff having elected to appear before the board of directors to obtain adjustment of his alleged loss, the decision there made must be given the effectiveness and finality of an adjudication by a court of competent jurisdiction, and no further action for recovery upon the policy can be maintained. The trial court overruled this objection and did not err in so doing. Whether it be possible for a corporation or association to devise a scheme or plan by which it shall itself be judge and jury to adjudicate the question of its own liability upon its own contracts to the exclusion of the judicial tribunals provided

by law we need not now stop to consider, for, even if we
assume that such a thing is legally conceivable, we are very
certain it is not to be found in the law above quoted. The
evident purpose of this provision is to promote adjustment
and settlement of losses without litigation, and to that end,
if the claimant and adjuster sent out to make investigation
shall fail to reach an agreement, a further hearing and con-
sideration by the board of directors are provided for. Though
the by-law speaks of this hearing as a "final adjustment,"
this cannot fairly be construed as a final and conclusive
determination of the right to recover on the policy, but rather
as the final effort to adjust or settle the claim amicably.
Neither the adjuster nor the board of directors in such case
acts judicially. Their attitude is that of representative of
the association making inquiry to satisfy themselves whether
the loss is within the terms of the policy, and their final
determination to reject the claim is not an adjudication of
plaintiff's right to recover, but is rather their final conclu-
sion that the proofs offered are insufficient to justify them
in making payment without suit.

Nor do we find anything in our cases or the policy of
our own statutes or system of procedure to sustain the propo-
sition that the effort of plaintiff to obtain payment of his loss
by amicable adjustment operates as an election of remedies
to bar him from seeking relief in the courts. To thus penalize
negotiations for the private adjustment of disputed claims
is not to lessen litigation, but to multiply it. There is noth-
ing in this provision for settlement by adjusters or by the
board of directors which brings the case within the rules or
precedents applicable to the arbitration of disputes, or to
contracts by which matters merely incidental or collateral to
the performance may be referred to the decision of a desig-
nated third party. The by-law in question does not attempt
to prohibit resort to the courts, and such effect is sought to
be deduced only by way of argument or inference from the
use of the phrase "final adjustment." For the reasons sug-

gested, we are not disposed to adopt that construction, and therefore hold that the court correctly overruled appellant's motion for a directed verdict.

III.    In one paragraph of the court's charge the jury was told that, in determining whether the animal was killed by lightning, they were not at liberty to indulge in mere speculation or conjecture, but that they could properly consider their own observation and experience, if any, with reference to losses of that nature.    This was excepted to, and the giving thereof is now assigned as error.    In our opinion the instruction cannot be sustained, and in giving it the court committed an error which was prejudicial to the defendant. A jury is to try a case on the evidence adduced, and not upon personal knowledge.  *Clarke v. Robinson*, 44 Ky. (5 B. Mon.) 55.    Of course, in weighing testimony, the jurors may use the knowledge and experience which they possess in common with mankind in general; but it is not proper for some of them having special knowledge of a subject, either to state this knowledge to their fellow jurors, or to act upon it in arriving at a verdict.    If such a course were permitted, no record could be made of the testimony on which the case was decided, and the information upon which the jury acted would come from unsworn witnesses.    If this were not the rule, there would be no necessity in many cases for introducing any testimony at all upon a given proposition, for some of the jurors might have special knowledge or experience with reference to the subject which he could detail to his fellows, and this would be the foundation of the verdict.    Moreover, all cases are to be tried upon the testimony adduced, and jurors are permitted to use the knowledge and experience possessed by mankind in general in weighing that testimony.    If this were not the rule, a case could be tried upon common knowledge and experience without the introduction of any testimony.    The rule that in weighing the testimony of experts a jury is not bound to receive it as final has no application

2. TRIAL: evidence to be considered by jury: instructions.

here. If no testimony is given by experts at all, surely a jury cannot render a verdict based upon their own knowledge alone. This has so many times been held that there is no need for citing authorities upon the proposition. And for a much stronger reason it is highly improper for any of the jurors to consider and found a verdict upon the special knowledge or observation of some of its members. The authorities are but one way upon this proposition. In *Douglass v. Trask*, 77 Me. 35, an instruction to a jury to infer the facts from the evidence, "or from such personal knowledge as you may have in relation to matters of this kind," was held erroneous. An instruction that "the jury may call into requisition their practical experience and knowledge relating to cattle of this kind" is erroneous. *Page v. Alexander*, 84 Me. 83 (24 Atl. 584). See, also, to the same point, *Karrer v. City*, 142 Mich. 331 (106 N. W. 64).

Upon request a jury should be instructed that the case should be tried upon evidence given, and not upon information that one or more of the jurors may have outside of the record. *Citizens' St. Ry. Co. v. Burke*, 98 Tenn. 650 (40 S. W. 1085). An instruction not limiting jurors in their finding of facts to the testimony in the case was held erroneous in *Goulding v. Phillips*, 124 Iowa, 496. An instruction that the jury should use their own judgment as to the value of services was held erroneous in *Wood v. Barker*, 49 Mich. 295 (13 N. W. 597). It is error to tell a jury to use their own judgment, experience, and knowledge in determining what would have prevented a fire. *Burrows v. Delta Co.*, 106 Mich. 582 (64 N. W. 501, 29 L. R. A. 468). It is error for a juror to state in the jury room his own knowledge of facts bearing upon material issues. *Hathaway v. R. R. Co.*, 97 Iowa, 747. A jury cannot, of their own knowledge, determine in how short a distance a train can be stopped. *Union Pacific R. R. v. Shannon*, 33 Kan. 446 (6 Pac. 564). An instruction authorizing a jury to take into consideration their own experience and observation regarding the matters under trial in addition to

the evidence is erroneous. *Chicago, R. I. & P. R. R. v. Cemetery Ass'n,* 57 Pac. 253.

In *Waite v. Teeters,* 36 Kan. 604 (14 Pac. 146), the court said:

The next objection made by the plaintiff in error is the following instruction: 'That the measure of damages, if you find that the corn was converted, was the value of the corn as it stood in the field at the place and time of conversion, and, in arriving at such value, you may take into consideration the kind and character of the corn, the number of acres, where it was situated, and all the circumstances of the case; and you have also a right, in arriving at the value of the corn, to call to your aid what knowledge you possess in common with mankind generally.' As the evidence is presented here, we think that part of the instruction which directed the jury that they might use their own knowledge in determining the value of that particular corn was misleading and erroneous. The value of the corn was to be determined as it stood in the field, and at the time the alleged conversion occurred, which was September 10, 1884. It was then unripe and unharvested, and no witness undertook to state what it was then worth. Not a syllable of testimony was offered in regard to its value per bushel, by the acre, or other measure, in that neighborhood, or in fact anywhere. The case cited, of *Railroad Co. v. Richards,* 8 Kan. 101, correctly decides that in making up their verdict the jury are to use the knowledge and experience which they possess in common with mankind generally; but the court there distinctly says that the jury cannot use and apply the knowledge they may have of the particular case on trial; and that, if any juror has such knowledge, he should be sworn. Here the court directed the jury that they might use their knowledge in finding the value of this particular corn, standing unripe and unharvested in a place somewhat remote from a general market. There was testimony offered of the quality and location of the corn, and the jury could take notice that corn such as that described was of some value, and this would have justified a finding of nominal value; but from the verdict we see that far more than nominal damages were allowed. The jury could apply their general knowledge and experience to the facts in arriving at a conclusion upon many other matters; but the value of unripe corn standing in a particular field, somewhat distant from a railroad and a market, was not common knowledge, and was a fact to be proven in the case. The jury, collected, as

it probably was, from all occupations, may have been consti-
tuted, in part, from farmers resident in the locality, who were
conversant with the demand and supply of corn like that in
controversy, and also of other facts sufficient to enable them
to form a correct opinion upon its value; but such informa-
tion is special, and not common to even other members of the
jury following different occupations, and who resided in other
parts of the county, and can be used only when given in
testimony.    *Union Pac. Ry. Co. v. Shannon,* 33 Kan. 446, (6
Pac. 564;) *Railroad Co. v. Richards,* 8 Kan. 101.

In *Gibson v. Carreker,* 91 Ga. 617 (17 S. E. 965), the
court, by Lumpkin J., said: "It was certainly error to charge
the jury that, in ascertaining the value of the lands at the
time of the breach of the bonds, they might consider not only
the evidence, but their own knowledge as to the value of land
in the country.    Juries should decide questions of fact accord-
ing to the evidence introduced before them, and their personal
knowledge certainly cannot constitute a part of the evidence.
This is so obvious that we deem a further discussion of this
subject unnecessary."    See, also, *Bowman v. Foundry Co.,*
226 Mo. 53 (125 S. W. 1120); *Hale v. State,* 122 Ala. 85 (26
South. 236); *Northern Supply Co. v. Wangard,* 123 Wis. 1
(100 N. W. 1066, 107 Am. St. Rep. 984); *Burrow v. Transfer
Co.,* 106 Mich. 582 (64 N. W. 501, 29 L. R. A. 468).

In view of such an array of cases, which are sound in their
reasoning, it is impossible to sustain the instruction complained
of without making a bad precedent.    It must always be
assumed, no matter what the fact may be, that a jury follows
the instructions of the court, and if that be true the verdict
here may have been founded upon the special observation or
experience of some of the jurors with reference to animals
killed by lightning, and not upon the testimony adduced with
reference thereto.    That such would not be the general knowl-
edge and experience of mankind is clear.    The defendant intro-
duced expert testimony to show that the dead animal had none
of the characteristic marks or signs indicative of death by
lightning, and this in the nature of things was all that it

could do. This testimony could, under the instruction complained of, have been easily overthrown by statements of some juror that he had observed the marks on animals killed by lightning, and that no such marks were the accompaniment of death by lightning. If that were the case, then it is manifest the verdict would not have been based upon the testimony adduced. Had the instruction limited the jurors in weighing testimony to their own personal observation and experience, it might not have been so bad, but it did not do so, and in this respect there was manifest error.

For the error pointed out, the judgment must be, and it is, *Reversed.*

WEAVER, J. (dissenting).—I am unable to agree that the trial court erred in giving the instruction discussed in the third paragraph of the foregoing opinion. On the contrary, when construed as it should be in connection with the entire charge of the court, it announces a rule of law which is both sound and wholesome. The record shows that the defense relied for the most part on evidence of an expert or opinion character that the marks said to have been found upon the body of the dead animal did not indicate it had been struck by lightning. In different paragraphs of the charge the court expressly warned the jury that the burden was upon the plaintiff to establish his claim by a preponderance of the evidence, and in the same paragraph, and in connection with the very language criticised by the majority, the court told the jury that its verdict must be found *from the evidence offered and submitted to the jury.* This was repeated so often and so clearly that to say confusion or misunderstanding could have arisen in the minds of the jurors concerning this elementary rule is an impeachment of their sanity. But the testimony was wholly of a circumstantial character. No one saw the animal killed. It was the claim of the plaintiff that the marks upon the body indicated death by lightning. This the defendant denied, and offered in evidence the opinion of the witnesses

based upon their experience and observation to the effect that such marks did not indicate injury by lightning. It was then proper for the court to instruct upon the subject of expert evidence, and in connection therewith I think the statement in such instruction was not erroneous. Jurors are not required to accept the mere opinion of any witness, even though undisputed. This is especially true where the subject-matter of the opinion has reference to a fact or condition which is as likely to have fallen within the observation of the average juror as of the witness who assumes to speak from expert knowledge. In such cases it has frequently been held that the jury is entitled to exercise its own judgment upon the question so presented, even though the expert testimony is uncontradicted. Familiarity with the effect of lightning strokes upon the bodies of animals is not a thing known only to students of science or insurance agents and adjusters. It is a matter open to the observation and experience of the average man, and especially of the average farmer, everywhere. Jurors to whom such a question is submitted may and must exercise their own judgments in determining whether to accept an expert opinion as correct. The judgment which they are thus to exercise is the quality of mind which enables them to consider and compare and discriminate with respect to the values and relations of things and to reach just conclusions from given states of facts. The facts upon which they are to thus pass as jurors are to be found in the evidence alone, but the judgment which they are to exercise in rendering their verdict is a judgment enlightened not alone by the evidence or by matters of knowledge common to all men, but also by the matters common to the knowledge and experience of the jurors themselves. Either I misread the authorities, or the majority is wrong in saying the "authorities are all one way" in holding the rule of the instruction erroneous. For example:

Chief Justice Shaw has said: "Juries would be very little fit for the duties of the high and responsible office to which they are called, especially to make an appraisement

which depends upon knowledge and experience, if they might not avail themselves of these powers of their minds, when they are most necessary to the performance of their duties." *Patterson v. Boston,* 20 Pick. (Mass.) 166.

On another occasion the same distinguished jurist used these words: "The jury may properly exercise their own judgment and apply their own knowledge and experience in regard to the general subject of inquiry. In the present case the jury was not bound by the *opinion* of the witness." *Murdock v. Sumner,* 22 Pick. (Mass.) 156.

Citing these precedents approvingly, the Supreme Court of the United States has said: "It was the province of the jury to weigh the testimony of the attorneys as to the value of the services, by reference to their nature, the time occupied in their performance, and other attending circumstances, and by applying to it their own experience and knowledge of the character of such services." *Head v. Hargrave,* 105 U. S. 45 (26 L. Ed. 1028).

In *Lafayette v. Olsen,* 108 Fed. 340 (47 C. C. A. 367, 54 L. R. 33), it was held that, in considering the opinion of an expert concerning a defective plank which was the alleged cause of injury, it was competent for the jurors to make use of *their own knowledge and experience.* A similar instruction was upheld in *Beveridge v. Lewis,* 137 Cal. 628 (67 Pac. 1040, 70 Pac. 1083, 59 L. R. A. 581, 92 Am. St. Rep. 188).

Mr. Elliott, in his work on Evidence 1046, states the rule thus: "The effect of expert evidence or opinion rests entirely with the jury, and the jurors may apply *their own experience and knowledge* and exercise their own independent judgment upon the facts in evidence in reaching their conclusion." Bearing upon the same proposition, see *Manning v. Railroad Co.,* 166 Mass. 230 (44 N. E. 135); *Green v. Chicago,* 97 Ill. 370; *Stevens v. State,* 3 Ark. 66; *Houston v. State,* 13 Ark. 66; *McGarrahan v. Railroad Co.,* 171 Mass. 211 (50 N. E. 610); *Hayes v. Wagner,* 220 Ill. 256 (77 N. E. 211); *Wills v. Lance,* 28 Or. 371 (43 Pac. 384, 487); *Haight v. Vallet,* 89 Cal.

245 (26 Pac. 897, 23 Am. St. Rep. 465) ; *Nybach v. Lumber Co.*, 48 C. C. A. 632 (109 Fed. 732).

The United States court, after recognizing the general proposition that jurors must find their verdict from the evidence alone and may not arbitrarily discredit an unimpeached witness, adds that "no such obligation attaches to witnesses who testify merely to their own opinion, and the jury may deal with it as they please, giving credence or not as *their own experience* or general knowledge may dictate." *The Conqueror*, 166 U. S. 131 (17 Sup. Ct. 518, 41 L. Ed. 937). To the same effect, see *Buckalew v. Railroad Co.*, 107 Mo. App. 575 (81 S. W. 1176) ; *Railroad Co. v. Baltimore*, 98 Md. 535 (56 Atl. 790) ; *Parks v. Boston*, 15 Pick. (Mass.) 209 ; *Stevens v. State*, 3 Ark. 66 ; *McGarrahan v. Railroad Co.*, 171 Mass. 211 (50 N. E. 610).

In the last-cited case the court says that the jury take with them to the jury room "*their knowledge and experience* of affairs, and are not only at liberty to use the same in drawing conclusions from the evidence, but ought to make use thereof. This rule certainly has the saving grace of common sense." Honest jurors ought not to be asked or instructed under any condition of the record to treat or give effect to the opinion of any witness as the truth when they know from their own knowledge and experience it is *not* true. If, for instance, a witness testifies without contradiction that a locomotive of given pattern and weight running at a stated speed on a level track cannot be brought to a stop within less than 1,000 feet, and there is upon the jury one or more practical locomotive engineers who know from actual experiment that the stop may be made in 600 feet, it would be a gross parody on the forms of justice to hold that such jurors, in reaching their conclusions upon the merits of the case, may not consult their own judgment, as enlightened by their own experience, and in reliance thereon reject the testimony which they know to be false or mistaken, even though not contradicted on the trial. The instruction which is condemned by the majority,

when fairly read in connection with the record and in charge as a whole, is well supported by the authorities to which I have referred. The rule for which I contend does not operate as the majority seems to think to make the jurors witnesses in the case or to make evidence of particular facts coming within their knowledge and experience. It does no more than to say that, if the intelligence and judgment of the jurors have been enlightened by their own experience and observation, they are not required to lay aside these qualifications in performing the duty for which they are impaneled. The rule is not only reasonable in itself, but it would seem unavoidable unless we are to reduce jury trials and the matter of jury instructions to an absurdity. What the jurors have seen, known, and experienced in their own lives and observations concerning the cause and effect of given or stated conditions is an inseparable part of their being. It is that which qualifies them to exercise judgment, and affords the only just basis for confidence in the correctness and integrity of the opinion or conclusion registered by their verdict. The verdict is none the less based upon the evidence and the evidence alone because in reaching it jurors have brought that evidence to the test thus indicated.

While I regret the conclusion announced in the majority opinion, I am glad to believe that it cannot result in widespread mischief. For however solemnly we may declare the rule so approved, and however faithfully the trial courts may go through the perfunctory routine of repeating it in their instructions, juries will continue just the same to test the truth and values of expert testimony concerning matters which are not of an abstruse or scientific character by the touchstone of their own experience and observation.

I think the judgment of the trial court should be affirmed.