MICHAEL B. McGARRAHAN *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk. January 21, 1898. — May 20, 1898.

Present: FIELD, C. J., ALLEN, KNOWLTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Railroad — Action — Damages — Law and Fact.*

In an action against a railroad corporation for personal injuries occasioned to the plaintiff while a passenger on its train by having his leg forced through a window and being dragged along the ground under a car which had been derailed and tipped over, the defendant is not entitled to a ruling that it would not be liable for blood poisoning unless it was the ordinary effect of such a wound.

A person who has been injured in a railroad accident is bound to use due diligence to obtain proper medical treatment, and his duty in this respect is fully discharged by using ordinary care in procuring a reputable physician and in following his instructions; and the railroad corporation is not exonerated from liability for the results of the injury, although those results are more serious than if he had had better treatment.

In an action against a railroad corporation for personal injuries occasioned to the plaintiff by the defendant's negligence, it is for the jury to determine whether his condition at the time of the trial was the effect of the injury so received, and, if it was, the relation of cause and effect is such as to subject the defendant to liability, which is to be measured by what they shall find to be the effect of the injury.

Evidence that one who practises as a physician or surgeon attends a patient and gives him professional assistance justifies a finding that the services are rendered for a pecuniary recompense to be paid by the patient.

Evidence that a sick person is kept and cared for at a private house other than his home justifies a finding that he is there upon expense.

Evidence that a person has been engaged for two years in studying for a profession, and that he has been employed to do certain labor, taken in connection with his appearance and with testimony to the effect that he is permanently disabled by disease of the heart, is enough to justify a finding that his capacity to earn money has been lessened.

The jury are properly instructed that the plaintiff, in an action for personal injuries received in a railroad accident, is entitled to recover for his impaired capacity to earn money in the performance of manual or mental labor, and also the sum which he has properly expended in endeavoring to effect a cure,

and that it is not necessary for him to prove the expenditure of any definite sum, but that the jury may use their own knowledge of the charges ordinarily made by physicians for their services in determining the amount to be allowed.

Tort, for personal injuries occasioned to the plaintiff by the alleged negligence of the defendant. Trial in the Superior Court, before *Blodgett*, J., who allowed a bill of exceptions, in substance as follows.

The defendant admitted its liability for any injuries to the plaintiff which were due to the accident hereinafter described.

The plaintiff testified, in substance, that on May 7, 1896, while he was a passenger on a train of the defendant, at about 7.30 P. M., the car in which he was riding, near its station in Boston, was derailed and tipped over; that the plaintiff was thrown against the back of the seat behind him, and then against the back of the seat in front, and then against the opposite side of the car, on which side the car tipped over and his left leg went through the window, and this side of the car, with his leg under it, was scraped along the ground for some distance; that he was unconscious for a time, and, when he recovered his senses, was put in a hack at the defendant's station and sent to the Emergency Hospital; that he stayed there under the direction of the doctors until they found time to examine him; that then one of them examined him and dressed his injured leg, and put a bandage on it; that he remained there about two hours, and from there he went outside and got a hack, as he was told at the hospital that they had no accommodations for him to stay over night, and he must find a place for himself; that his leg along the shin bone was cut and bruised, and the skin scraped off; that he then went to the home of a cousin in Readville; that on the next day he came to Boston about eight o'clock in the morning, for the purpose of going to the Massachusetts General Hospital for treatment, and on his way to the hospital stopped at the defendant's station, the scene of the accident, for the purpose of recovering property which he had lost at the time he was injured; and that while there his leg began to swell and pain him so much that he went to a house in Boston where a cousin lived, and went to bed and sent for a doctor.

Dr. Coxwell, called as a witness by the plaintiff, testified that he was called to attend the plaintiff some time during the day,

and visited him at about six o'clock in the evening, on May 8, 1896; that he found a wound on the plaintiff's left leg, which was inflamed and tender, and in which blood poisoning had already set in; that the leg had an antiseptic dressing over the wound and a surgical bandage from the instep to the knee wound around the leg; that this bandage thoroughly protected the wound and supported the leg in case the patient used it; that the witness cleansed it and applied antiseptic dressing, and raised the leg; that the blood poisoning was probably due to the dirt, or glass, or rusty iron, or germs that entered the flesh at the time of the accident; that blood poisoning began immediately, and it was not possible at the time he examined the wound thoroughly to disinfect it; that erysipelas had set in, and the whole system was infected; that the plaintiff's head, right hip, pelvis, and lower part of the back were found to be injured; that his heart was examined with the stethoscope and found to be sound; that the witness visited him professionally up to the day of the trial; that periostitis of the left leg, which was a poisonous disease, set in a few days after the injury; that upon consultation with another physician, whom he called in on account of the plaintiff's dangerous condition, he decided to operate on the leg, and on May 16, 1896, he made an incision through the periosteum down to the bone; that after that he dressed the wound two or three times daily, as he did before; that, as a result of the poisoned condition of the wound, septic endocarditis set in, which produced organic lesions of the heart, and resulted in severe valvular disease of the heart; that the injury to the leg caused a shrinking of all the tissues of the leg, and weakened the limb, and this condition existed at the time of the trial; that there was an inflammation of the hip joint, a swelling of the joint, and the parts and ligaments surrounding it were swollen, that this inflammation increased during the first three weeks, continued for several months, and gradually subsided until the plaintiff got out of bed and went around on crutches; that since then the progress had been slower, and there was pain upon use in this joint, and would be for an indefinite time in the future; and that the pelvis was wrenched and sprained, and this condition was one of the reasons why he used a cane in getting about, and from which he would probably never recover.

Upon cross-examination this witness, and several other medical witnesses, testified that blood poisoning was not an ordinary incident of wounds, if they were treated by antiseptic cleansing and dressing, or were cleansed and dressed in a proper manner.

The plaintiff testified that for two years previously to the injury he had been studying law in an office in Providence, Rhode Island, but he did not testify as to what the amount of his earnings were at any time.

A witness called by the plaintiff testified that he had employed him to make repairs on real estate a short time before the injury, and described what the plaintiff did.

There was testimony by Dr. Coxwell that he had attended the plaintiff some two hundred times during his illness.

There was also evidence that Dr. Coxwell had been surgeon to the Worthing Hospital in England for fifteen years, city physician of Worthing for eighteen years, and medical examiner for a number of large life insurance companies in London for twenty-five years; that he had practised medicine and surgery in England for twenty-seven years, and probably had between three thousand and five thousand cases a year; and that since April, 1893, he had been practising medicine and surgery in Boston.

Mary Young, who was the plaintiff's cousin, testified that he came to her house the day after the accident, and remained there five weeks; that he was confined to the bed all the time; that she took care of him during the first week; that his condition was very bad, and he got so she could not take care of him, and then she got a male nurse; and that he was delirious "most all night."

James J. Mulvey testified that he was a second cousin of the plaintiff; that he had known him ten or twelve years, and been in the habit of seeing him two or three times a year; that after the accident he took care of him at Mrs. Young's house, beginning after the first week, for four weeks; and that his condition nights was very poor, and when talking he seemed to be out of his mind.

Mrs. Lane testified that the plaintiff came to her house in June, 1896, and remained there until September 19, 1896; that she took care of him; that he was very ill during the first three or four weeks, and he was confined to his bed for several weeks;

and that Dr. Coxwell arranged for him to come to her house, as the house in which he had been staying was sold and the inmates were ordered to leave it.

There was testimony that the plaintiff might live an indefinite period if he used proper care, but that he would never be able to work physically or mentally in the future, and would have to have medical attendance as long as he lived.

Dr. George H. Monks, a witness called by the defendant, testified that occasionally cases of periostitis develop after such injuries without any cause being apparent; that it was rather uncommon for periostitis to develop after a wound; that it might develop after such a wound as this was said to have been, as a result of the fact that the wound had not been kept or made surgically clean; and that that was the principal reason, or from the fact that the leg had not been properly rested.

The defendant requested the judge to rule as follows:

" 1. If the jury find that blood poisoning was not the natural and ordinary consequence of the wound on the plaintiff's leg, but was due to improper or imperfect cleansing or dressing of the wound, the defendant would not be liable for the blood poisoning, or for its effect upon the plaintiff.

" 2. It was the plaintiff's duty, having been injured, to use reasonable diligence to obtain suitable medical treatment, and if the treatment which he obtained was improper or negligently applied, or if the person giving such treatment was negligent in applying or omitting to apply proper treatment, the defendant is not liable for the consequences thereof.

" 3. There is no evidence of what the plaintiff was earning at the time of the injury, or of what his earning capacity was, and the jury cannot award damages for the loss either of his earnings, or capacity to earn.

" 4. There is no evidence that the plaintiff has been put to any expense by reason of his injuries, and the jury can award him no damages upon that ground."

The judge declined so to rule, and instructed the jury, among other things, as follows:

" The test whether the relation of cause and effect exists between two things — because that is the question here, whether the injury is the cause of the present condition of the plaintiff

— is not whether such a condition of things as you may find now exists with this plaintiff commonly and ordinarily follows, but whether it does sometimes follow, and as a matter of common knowledge and experience may be expected sometimes, in rare cases possibly, to follow from an injury of that kind. The question for you is a practical one, whether, using language as it is ordinarily used and understood, the condition of the plaintiff to-day, for which he seeks to recover damages, was the effect of an injury received by him in May, 1896. If it was, then there is the relation of cause and effect such as to subject the defendant to liability for those consequences which ensued from the injury so received by the plaintiff.

" The burden is upon the plaintiff to satisfy you that the illness with which he is now afflicted, and from which it seems to be conceded by all the experts he will never entirely recover, is due to the injury received at the time when this accident occurred, either wholly or in part. If you find upon the evidence that he has sustained the burden of proof in this respect, and that his present physical condition is due wholly to the injury received at that time, then he is to be compensated by having what you say will afford reasonable compensation for his present condition. If upon the evidence you find that his present condition is not due wholly to the injury received, but that that condition of things existed in part before the injury, and still you are of the opinion that this particular trouble was aggravated and intensified by the injury, then so far as it was so aggravated — and the burden is upon the plaintiff to show you how far it was aggravated — he is to have damages only sufficient to compensate for the increase or aggravation of the illness in this respect. . . .

" What are those elements which ordinarily are to be considered by the jury in assessing damages in a case of personal injury? One of them is the impaired capacity to earn money in the performance of manual or mental labor, and of course in the determination of that question the jury must take into consideration the age of the plaintiff, his probable expectation of life, how far he has capacity to earn money as men ordinarily do in the performance of work which they are fitted or accustomed to perform, whether that work is physical or mental

labor, and the jury must say how much the plaintiff should have by reason of this impairment of capacity in the use of physical powers to earn money.

"Then, again, the plaintiff is entitled to recover the sum which you find he has reasonably and properly expended in endeavoring to effect a cure. What he has reasonably paid for medical attendance and nursing and medicine, so far as the evidence in the case enables you to determine, in an attempt to effect a cure, he is entitled to recover in this case. And if the evidence shows that to some extent it would be necessary for him to incur similar like expenses in the future for medical attendance and nursing, he is to have that taken into consideration at the present time. . . .

"The plaintiff might have shown, had he seen fit to do so, what he had actually expended up to the present time, what liability he had actually incurred, and he might have offered evidence to show that the expense he had incurred up to the present time was reasonable and proper. But the plaintiff is not required to furnish so definite proof as that unless he sees fit to do it. There is evidence in the case as to medical attendance. Dr. Coxwell told you the number of visits he had made to the plaintiff for the purpose of treating him. There is no evidence as to what the ordinary charge for such a visit is. There is no evidence as to what the charges of Dr. Coxwell ordinarily are. . . . I must assume that you have some knowledge in common with men in general as to the charges ordinarily made by physicians for attendance and services such as you find upon the evidence in this case have been rendered, and you may avail yourselves of that knowledge for the purpose of determining what sum the plaintiff should have by reason of the expense he has properly and reasonably incurred in endeavoring to effect a cure.

"The contention of the plaintiff is that the heart disease, as existing at the present time, is fairly attributable to the injury. . . . And the plaintiff says that upon the evidence of the experts you ought to be satisfied that the present condition of the heart is due to that injury. There was the injury, then, as the plaintiff claims, of blood poisoning, and then different conditions of things finally resulting in the present condition of the

plaintiff's heart, a condition which it is conceded incapacitates the plaintiff for the performance of ordinary work, and a condition from which it is conceded that there is not likely to be a recovery.

"Suppose that condition of things, the injurious results of blood poisoning might have been averted by proper medical treatment; it is the contention of the defendant, among other things, that the injury received did not naturally result in the condition of things now existing. In other words, that there is not the relation of cause and effect between the injury confessedly received in May of last year and the physical condition of the plaintiff to-day, and for a considerable time prior to the present time.

"It is said upon the evidence you may find, or ought to find, that he did not receive proper medical treatment, and that the poisoning by the entrance of germs into this wound might have been prevented by proper treatment. Suppose that to be so, how is the plaintiff affected? The plaintiff was required to use reasonable care in order to effect a cure; he must use reasonable care to secure proper medical and surgical treatment after he was injured; he must use that degree of care in respect to securing proper professional treatment that men of ordinary prudence and discretion do use in similar cases, and if in fact the plaintiff did use such a degree of care, he did all in the first instance that the law required him to do. If in the exercise of reasonable care he properly called in the services of Dr. Coxwell, then the plaintiff would not be responsible for the consequences of a mistake made by his attending physician, however serious that mistake might be. Suppose a case, one where upon the evidence you were satisfied that the condition of the plaintiff as it is to-day was due to the fact that he did not have from his attending physician or surgeon proper treatment, and that it was due wholly or mainly to that. Still, if the plaintiff in the selection of the physician or surgeon, and in compliance with the directions of his physician, was in the exercise of reasonable care, the defendant is still responsible in damages for the injurious results to the plaintiff of the injury, although those results are more serious than they would have been had he had better treatment."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*C. F. Choate, Jr.*, for the defendant.

*E. H. Pierce, (W. L. Currier & D. H. Sheahan*, of Rhode Island, with him,) for the plaintiff.

BARKER, J.   In the first request the court was in effect asked to rule that the defendant would not be liable for blood poisoning, unless it was the ordinary effect of such a wound.   This was clearly wrong, and the instruction as requested was properly refused.   The other matters embraced in it were properly treated in the charge.

The second request combined two rulings, one that the plaintiff must use due diligence to obtain proper medical treatment, which was good law, and another that if the treatment which he did obtain was improper the defendant would not be liable, which was wrong.   The plaintiff's duty in this respect was fully discharged by using ordinary care in procuring a reputable physician, and the same care in following his instructions.   The second request was therefore properly refused.   Nor was there any error in the instructions given upon the matters embraced in these requests.   Upon the first, the jury were properly told that the question for them was a practical one, whether, using language as it is ordinarily used and understood, the condition of the plaintiff at the time of the trial was the effect of the injury which he received upon the occasion of the accident, and that if it was, that there was such a relation of cause and effect as to subject the defendant to liability.   There was no evidence that there was improper medical treatment.   The whole foundation for such a contention was the fact that certain medical witnesses testified that blood poisoning was not an ordinary incident if wounds were dressed in a specified manner, but there was no evidence that blood poisoning was not a natural result of such an injury as that which the plaintiff received, and no evidence that the wounds which were inflicted on him were not skilfully and properly treated, and so nothing to call for an instruction to be separately given with reference to disabilities resulting from improper treatment.   It was enough to limit the jury to giving compensation for what they should find to be the effect of the injury.   So the instruction that if the plaintiff, in the selection of the physician or surgeon, and in compliance with his directions, was in the exercise of reasonable care, the defend-

ant was still responsible in damages for the results of the injury, although those results are more serious than if he had had better treatment, was correct, and was all that was required by this branch of the case.

Jurors take with them their knowledge and experience of affairs, and are not only at liberty to use, but ought to use, that knowledge and experience in drawing conclusions from the evidence. Evidence that one who practises as a physician or surgeon, attends a patient, and gives him professional assistance, justifies a finding that the services are rendered for a pecuniary recompense to be paid by the patient. Evidence that a sick person is kept and cared for at a private house other than his home justifies a finding that he is there upon expense. Evidence that a person has been engaged for two years in studying for a profession, and that he has been employed to labor, taken in connection with his appearance and with testimony to the effect that he is permanently disabled by disease of the heart, is enough to justify a finding that his capacity to earn money has been lessened. All the requests upon these aspects of the case were properly refused, and the instructions given were right.

*Exceptions overruled.*