[File No. Cr. 150.]

STATE OF NORTH DAKOTA, Respondent, v. CLIFFORD CHAMBERS, Appellant.

(280 N. W. 196.)

Opinion filed April 14, 1938.   Rehearing denied June 27, 1938.

*E. R. Sinkler* and *G. O. Brekke,* for appellant.

*Alvin C. Strutz,* Attorney General, and *Roy A. Ilvedson,* for respondent.

GRIMSON, Dist. J. The defendant was convicted by a jury in Ward county of engaging in the liquor traffic as a second offense. The particular charge in the information was that on November 27, 1935, he had in his possession in the county of Ward, State of North Dakota, intoxicating liquors, after having pleaded guilty to and been duly sentenced on a charge of engaging in the liquor traffic on June 1, 1935, in Burleigh county. A motion was made for a new trial on the ground of errors of law arising during the trial, of errors in charging the jury, and of the insufficiency of the evidence. The motion was denied. An appeal was taken from the judgment and from the order denying the motion for a new trial.

The evidence discloses that on November 27, 1935, R. L. Dierdorff, sheriff of Ward county, together with J. B. McEown, Vincent E. Lee, deputy sheriffs, and W. C. Rustad, an agent of the internal revenue department of the federal government, visited the defendant's residence at 1527 Fourth Avenue, S. E., Minot, at about 9 or 9:30 in the evening. The sheriff and Deputy McEown entered the residence through the front door while Deputy Lee and Mr. Rustad went to the rear of the house and entered through the garage, which was attached to the house, with a door leading from the garage into the kitchen. Mr. Dierdorff and Mr. McEown found the defendant Chambers in bed in a room adjoining the front room of the house. Neal VanBerkom and an unidentified lady were in the room with him. Some conversation took place there between the sheriff and the defendant. The sheriff told the defendant he had a search warrant and wanted to look the

place over. According to witness McEown defendant answered something to the effect that there was no use to search the house, "Whatever there is, it is in the garage." That was immediately upon their entry into the house, and before Lee and Rustad had come in from the garage. In the meantime, Lee and Rustad had forced open the garage door, which was locked with a spring lock. In the garage they found 81 half pints and 65 pints of whiskey and 24 pints of sloe gin. Of this amount 9 half pints of whiskey were in a large paper sack on the running board of a Pontiac Coupe, belonging to defendant's wife, which was in the garage. The rest was in boxes on the floor of the garage, two or three of which had been opened. Mr. Rustad testified as to the kind and intoxicating quality of the liquor so found. It was stipulated that defendant and his wife were the owners of the premises so searched. Evidence was offered of the defendant's prior conviction in Burleigh county.

For the defendant Dr. M. J. Fardy testified that on November 25, 1935 he called at defendant's home, found him in bed, suffering a pain in his lumbar region, as a result of an injury to his back; that it was impossible for him to stand or sit, that the doctor saw the defendant again on November 29; that he knew defendant was in bed a day or two before he saw him and a day or two after. Otherwise the doctor said the defendant appeared normal and that an illness of that sort would not affect his mind. The defendant's wife then testified that about 4:30 o'clock on the afternoon of November 27, 1935 a Mrs. Connely, with her husband, came in a car to defendant's residence and asked if she could leave some boxes there overnight; that Mrs. Chambers told her she could; that they talked a few minutes while the husband put them in the garage; that the defendant at that time was sleeping; that he had been sick "3, 4, 5, days;" that he slept continually until 9:00 o'clock that evening and was not informed of the boxes; that about 9:00 o'clock Mrs. Chambers went to her mother's place; that she left defendant alone and sleeping; that when she returned the officers had been there; that then for the first time she learned that the boxes contained liquor. Mrs. Chambers further testified that the Connelys came back the next morning about 10:00 o'clock and said they were taking the boxes to Montana, that they were sorry if it had got the Chambers into trouble, and would do all they could to help

them out. Mrs. Chambers admitted, however, that she never made a report of the Connelys leaving the liquor there to the sheriff or state's attorney, nor had her husband. Her description of her association with the Connelys is rather vague. She said she had met Mrs. Connely twice before, that Mrs. Connely was small and dark, weighing about 125 pounds, that she lived in a dirty gray duplex house in Minneapolis "four or five blocks from the Sears Roebuck big store." She did not know the address or the direction. She had not seen them since nor made any attempt to communicate with them.

That was all the testimony. Neither the Connelys, VanBerkom, nor the unidentified lady were called.

The defendant first objects on the ground that the evidence is not sufficient to justify the verdict. The state's evidence shows the finding of intoxicating liquor in large quantities on defendant's premises. Although the defendant may have been sick in bed, that he knew of this liquor in his garage is indicated by his answer to the sheriff. The defendant questions that testimony because it was apparently reluctantly given by the deputy sheriff. That does not necessarily weaken the testimony. In fact, if the deputy sheriff seemed overly cautious, that may have made it more credible to the jury. VanBerkom was present at the time of that conversation, but he was not called to rebut it. Mrs. Chambers' testimony in explanation of the possession is contradicted by the paper sack filled with bottles of whiskey on the running board of her car and by two or three of the boxes being opened. Her story can well have been found by the jury akin to that of the mythical stranger who so often appears as the villain in criminal defenses. Furthermore, the jury had the advantage of observing the demeanor of the witnesses upon the witness stand.

Clearly the evidence is sufficient to justify the verdict.

In this connection the defendant's counsel objects to the following instruction:

"When unlawful liquor is found on the premises of or in the physical possession of a person and it is claimed that the liquor was where found without the knowledge of such person, a question of fact arises to be decided by the jury as to whether the defendant knowingly possessed or had control thereof. In the absence of a contrary explanation or evidence it may be inferred as a fact that a person know-

ingly possesses and is in conscious possession of unlawful liquor found on his premises or in his physical possession. However, the burden is upon the state to prove conscious possession beyond a reasonable doubt."

The objection to this instruction is on the grounds that it allowed the jury to presume conscious possession from unlawful liquor found on defendant's premises. Counsel contends that a presumption as to that is authorized only by § 10,128, Comp. Laws 1913. That section refers to a presumption of keeping for sale, which is not the crime here charged. This court has, however, repeatedly held that the finding of intoxicating liquor in a dwelling house warrants an inference of conscious possession. In this case the liquor was found in the garage which was attached to and connected with the house as heretofore shown. In the case of State v. Nedtvedt, 66 N. D. 535, 268 N. W. 397, where the liquor was found in the home of the defendant, the court says: "Where unlawful intoxicating liquor is found in the possession of a person, the physical fact of possession raises an inference of knowledge of the presence of such liquor." See also State v. Stern, 64 N. D. 593, 254 N. W. 765.

This instruction is almost verbatim from the syllabus of the case of State v. Schuck, 51 N. D. 875, 201 N. W. 342, except that the last sentence, which places the burden on the state, is added. Furthermore, the state in this case does not have to rely on the presumption, as there was direct evidence of knowledge. This instruction is without prejudice.

Error is claimed on account of the following instruction: "The term 'possession' means having a thing in one's power, the personal right and power to control a thing either as owner or as proprietor, or having a proprietary right in it either held personally or by another who exercises it in one's place or name. Possession is the right or enjoyment of a thing which a man holds or exercises for himself, or by another, or for another."

While defendant's counsel admits that this may be a correct abstract statement of the law, he claims it is not applicable to the case at bar. He bases this claim on his contention that there is no evidence the defendant himself knew of this liquor. In that, however, he is mistaken, as heretofore pointed out, and the attempted defense that this

liquor was brought there by another justified this instruction, as well as the instruction, also objected to, that the state did not have to prove the defendant was the owner of the intoxicating liquor. Both instructions state the law correctly and were justified by the evidence in the case.

Strenuous objection is made to the following instruction by the defendant:

"To assist you in considering the evidence in this case, you may in addition thereto take into consideration in connection therewith, such matters of common knowledge and science as may be known to all men of ordinary understanding and intelligence; and you may apply such matters of common knowledge to the circumstances and draw such inference from such application as may be necessary in arriving at a verdict in the case, the same as though such matters of common knowledge and science were fully proven by the evidence in this case."

While this instruction alone may be subject to criticism, it must be here considered in connection with the rest of the court's charge and if upon the whole charge the law is correctly stated that is sufficient. State v. McCauley, ante, 198, 277 N. W. 605; State v. Bowe, 57 N. D. 89, 220 N. W. 843, 844; State v. Finlayson, 22 N. D. 233, 133 N. W. 298; State v. Carter, 50 N. D. 270, 195 N. W. 567; State v. Hoff, 29 N. D. 412, 150 N. W. 929; 16 C. J. 1053. The court, in other parts of the charge, not excepted to, told the jury:

"You have no right to go outside the evidence and look for any theory upon which to build a verdict one way or the other. You have a right to draw from the facts and circumstances proven those just, fair and reasonable conclusions that an ordinary man would draw under like circumstances. . . . In determining the weight to be given to the testimony to the several witnesses who have been examined before you, you may take into consideration . . . all the facts and circumstances disclosed by the evidence tending to corroborate or contradict such witnesses, if any such are proved. You have no right to return a verdict in this case based upon your own notions of right and justice, regardless of the evidence and the law. . . . You should look at the evidence in this case in a common sense light and analyze

it by that every day experience and observation of human affairs of which you are possessed as individual members of society, and return such a verdict as your honest judgments dictate."

The excepted portion of the charge begins:

"To assist you in considering the evidence in this case you *may* . . . take into consideration in connection therewith . . . and you may apply such matters of common knowledge to the circumstances and draw such inferences from such application. . . ."

The jury is charged further that it had no right to go outside of the evidence nor to base a verdict on its own notions. When all these instructions are considered together it seems clear that what the court told the jurors was that in considering the testimony and the credibility of the witnesses they had a right to measure that evidence by matters of common knowledge and science known to all men of understanding and intelligence, in order to arrive at the truth.

The more experience and knowledge a man has, the more keenness of mental vision he possesses. That enables him to more readily see the motives and to judge the selfish interests of men. This experience and education a juror should not lay aside in passing upon the facts presented and the credibility of the witnesses.

"The value of experience is not to be given up when a man becomes a juror and is required to apply the tests of credit to the heart and mind of the witness, but whatever qualifications that experience gives should be employed to the end that the whole truth may be known and acted upon." Jenney Electric Co. v. Branham, 145 Ind. 314, 41 N. E. 448, 33 L.R.A. 395.

This experience and knowledge the jurors in this instruction are told they may employ, and they are told, when the whole charge is considered, that these matters are not to be considered as independent proof in the case, but merely in connection with the weighing of the evidence and the credibility of witnesses. When thus considered as a whole the charge cannot be held to be prejudicial. 1 Blashfield, Instructions to Juries, 550; 5 Reid's Branson, Instructions to Juries, 290; 1 Brickwood's Sackett, Instructions, 3; State v. Elsham, 70 Iowa, 531, 31 N. W. 66; McGarrahan v. New York, N. H. & H. R. Co. 171 Mass. 211, 50 N. E. 610.

The other assignments of error have been carefully considered and found to be without merit.

Affirmed.

BURR, NUESSLE and MORRIS, JJ., and SWENSON, Dist. J., concur.

CHRISTIANSON, Ch. J., and SATHRE, J., being disqualified, did not participate, Hon. P. G. SWENSON, Judge of the First Judicial District, and Hon. G. GRIMSON, Judge of Second Judicial District, sitting in their stead.