2008 ND 202

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Jennifer Marie BITZ, Defendant and Appellant.**

No. 20080101.

Supreme Court of North Dakota.

Nov. 19, 2008.

Justin J. Schwarz, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Kent M. Morrow, Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Jennifer Bitz appealed from a criminal judgment entered upon a jury verdict finding her guilty of driving while under the influence of drugs, arguing there was insufficient evidence to support her conviction and the district court erred in denying her motion for judgment of acquittal. We affirm, holding a rational fact-

finder could have found Bitz guilty beyond a reasonable doubt.

## I.

[¶ 2] On November 21, 2007, the North Dakota Highway Patrol received reports of a vehicle driving erratically along Interstate 94 as it approached the Bismarck–Mandan area. A Highway Patrol officer responded to the call, and observed a car matching the description and license plate number as the reported vehicle. The officer witnessed the car swerving from the shoulder of the passing lane to the shoulder of the driving lane and pulled the vehicle over. The driver identified herself as Jennifer Bitz, and told the officer her driving problems were due to the "very windy" weather conditions. The officer would later testify that, in her perception, there was very little wind, and that Bitz appeared "sluggish" and "disoriented." Bitz also appeared confused about the tenor and substance of the officer's questions, and occasionally took her foot off the brake, allowing her car to roll backward. The officer asked Bitz to step out of the vehicle, and testified she appeared unsteady on her feet, and needed to prop herself against the door when standing. The officer asked Bitz if she had been drinking or if she was taking any medication. Bitz stated she had recently had her spleen removed, and listed various medications and vitamins she was taking, but denied taking any medication recently which warned against driving after ingesting. The officer found a variety of unmarked pills in the backseat of Bitz's car, but testified she had no evidence that Bitz was not taking the drugs prescribed to her as instructed.

[¶ 3] The officer had Bitz perform several field sobriety tests, including a horizontal gaze nystagmus test, an alphabet test, counting backwards, a finger dexterity test, a walk and turn, and a one-leg stand. The officer testified that Bitz failed each test, and that a subsequent eye test indicated Bitz's concept of time had slowed down. The officer placed Bitz under arrest for driving under the influence of drugs and transported her to the regional Highway Patrol office where she submitted a urine sample. The sample came back positive for ibuprofen, acetaminophen, diphenhydramine or dimenhydrinate, Tramadol and naproxen. The sample was tested by a forensic scientist at the Crime Laboratory Division of the Office of the Attorney General, who testified the lab does not measure the amount of drugs in a person's system, and cannot determine whether the amount of drugs in a person's system is consistent with a dosage prescribed by a physician.

[¶ 4] At trial, the forensic scientist testified to the effects and classifications of the drugs found in Bitz's urine sample. Tramadol is a prescription analgesic used to treat pain. Two bottles of Tramadol prescribed to Bitz were admitted into evidence, and neither contained a disclaimer warning against driving after taking the medication. No testimony was presented by the prescribing practitioner. The forensic scientist testified that acetaminophen, ibuprofen, and naproxen are all over-the-counter analgesics, most commonly found in Tylenol, Motrin, and Aleve, respectively. Diphenhydramine or dimenhydrinate is most commonly found in Tylenol PM and Benadryl.

[¶ 5] At the close of the State's evidence in Bitz's trial for driving under the influence of drugs, and again at the close of all the evidence, defendant moved for a directed verdict of acquittal under Rule 29 of the North Dakota Rules of Criminal Procedure. Specifically, defendant argued that Tramadol was the only medication found in Bitz's urine which could have

caused impairment, and there was no indication that Bitz had not used Tramadol as directed. The district court denied defendant's Rule 29 motions, and Bitz was found guilty of driving under the influence of drugs.

## II.

[¶ 6]   Bitz argues there was insufficient evidence to sustain her conviction for driving under the influence, because she met her burden of proof under N.D.C.C. § 39–08–01 by showing her impairment was caused by a medication prescribed by a physician, and she took that medication as instructed by the prescription. Bitz preserved the issue of sufficiency of the evidence for appellate review. *See City of Bismarck v. Towne*, 1999 ND 49, ¶ 8, 590 N.W.2d 893 ("To preserve an issue of sufficiency of the evidence in a jury trial, the defendant must move the trial court for a judgment of acquittal under Rule 29, N.D.R.Crim.P.").

[¶ 7]   When reviewing challenges to the sufficiency of evidence at trial, this Court draws all inferences in favor of the verdict. *State v. Lusby*, 1998 ND 19, ¶ 5, 574 N.W.2d 805. This Court will reverse a criminal conviction "only if, after viewing the evidence and all reasonable evidentiary inferences in the light most favorable to the verdict, no rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Olson*, 552 N.W.2d 362, 364 (N.D.1996). In its review, this Court will not weigh conflicting evidence or judge the credibility of witnesses. *State v. Sabo*, 2007 ND 193, ¶ 18, 742 N.W.2d 812.

[¶ 8]   Bitz was convicted under N.D.C.C. § 39–08–01 for operating a vehicle while under the influence of drugs. The statute further lays out a defense to the charge:

The fact that any person charged with violating this section is or has been legally entitled to use alcohol or other drugs or substances is not a defense against any charge for violating this section, unless a drug which predominately caused impairment was used only as directed or cautioned by a practitioner who legally prescribed or dispensed the drug to that person.

N.D.C.C. § 39–08–01(1). Bitz has interpreted this language as an affirmative defense; therefore, for purposes of this appeal, we will look at it in the same light.

[¶ 9]   We begin by noting that there is no argument on appeal that Bitz was not impaired on November 21, 2007; rather, the crux of her argument involves whether over-the-counter medications are included within the purview of N.D.C.C. § 39–08–01(1), and whether there was sufficient evidence that she violated this section. We also note that no evidence was introduced at trial to establish which drug or drugs predominately caused Bitz's impairment on the road. Further, the State did not introduce evidence linking the medications found in her urine with her impairment. Notwithstanding the shortcomings in the evidence, the language of the statute and the latitude accorded the jury in drawing reasonable inferences from the evidence requires us to conclude that a rational factfinder could have found Bitz guilty of driving while under the influence of drugs.

[¶ 10]   We have long recognized not only the permissibility, but the desirability of the jury's employment of common knowledge and reason in reaching a verdict. *See State v. Chambers*, 68 N.D. 410, 417, 280 N.W. 196, 199 (1938) ("The more experience and knowledge a [juror] has, the more keenness of mental vision he [or she] possesses. . . .   This experience and education a juror should not lay aside in

passing upon the facts presented and the credibility of the witnesses."). Indeed, in this case, the district court issued a jury instruction reminding the jury of this principle, allowing them to apply "matters of common knowledge and science that are known to all persons of ordinary understanding and intelligence, and draw reasonable inferences from them, as if they were fully provided by direct evidence." Bitz has based her argument on the premise that Tramadol was the only drug found in her urine which could have impaired her ability to drive. However, the results of Bitz's urinalysis came back positive for several kinds of drugs. The jury was provided with both the scientific and brand names for these drugs, most of which are common in popular nomenclature, including Aleve, Tylenol, Motrin, Benadryl, and Tylenol PM.

[¶ 11] Here, the jury's common knowledge would allow them to take into account the variety of medications found in Bitz's urine, and draw the rational inference that the mixture of these drugs caused her impairment. The defense set forth in N.D.C.C. § 39–08–01(1) protects a person only insofar as that person has been prescribed a drug, and has taken that drug as instructed by a physician. There is no protection in the statute for non-prescribed drugs, for the effects of non-prescribed drugs interacting with one another, or for the effects of those non-prescribed drugs interacting with a prescribed medication. Had Tramadol been the only drug found in Bitz's system at the time she was arrested for driving while under the influence, the exception in N.D.C.C. § 39–08–01(1) would have been a defense under the circumstances of her arrest. However, Bitz tested positive for five different drugs, and the jury could have rationally concluded that the presence and combination of these drugs had caused her impairment.

[¶ 12] Bitz argues, however, that in enacting N.D.C.C. § 39–08–01(1), the legislature did not intend to regulate driving while under the influence of over-the-counter medications, such as the majority of those drugs found in her urine. However, the legislative history indicates the intent of the legislators to provide a defense only to those under the influence of prescribed medication, and only when such medication was taken according to a physician's instructions. Before the defense language was introduced by a committee amendment, one legislator expressed this concern:

> You are talking about an imprecise science, you are also telling a person that is going to get caught that he has no defense even though it may be a prescription given to him by a doctor. This is broad authority and we are taking the protection away saying that it doesn't make a difference if the medication was prescribed.

*Hearings on SB 2468 Before House Transp. Comm.*, 50th Leg. Sess. at 1 (N.D. 1987) (statement of Representative Dorso) (March 13, 1987). Once the amendment proposing the defense was introduced, a spokesperson from the "Governor's Committee on DUI and Health Department" said the intent of the language was to "insure that if you were allowed to use prescription drugs and you had not been told about the side effects and you were driving impaired that would be your defense." *Id.* at 2 (statement of Bruce Higgens) (March 20, 1987). The chair of the Governor's Committee on DUI and Traffic Safety provided written testimony that the amendment "notes that impairment by a prescription drug would be an allowable defense *if* the drug was the predominate cause of impairment and was used only as advised by a practitioner such as a physician or pharmacist." *Id.* (written state-

ment of Bruce Quick) (March 17, 1987) (emphasis in original). This debate during the committee hearings and discussions focused specifically on drugs prescribed to an individual by a physician or dispensed with advice of a pharmacist. Thus the language in the statute specifically provides a defense for drugs "used only as directed or cautioned by a practitioner who legally prescribed or dispensed the drug." N.D.C.C. § 39–08–01(1). The statute specifies prescribed drugs as a trigger for the defense, but provides no protection for an individual driving under the influence of other drugs or substances such as an over-the-counter drug taken without being prescribed.

[¶ 13] Further, based on our laws of statutory interpretation, the "drugs" contemplated in N.D.C.C. § 39–08–01 would include over-the-counter medications. Under N.D.C.C. § 1–01–09, when a word or phrase is defined in a section of our Code, that definition applies to "any use of the word or phrase in other sections of the Code, except when a contrary intent plainly appears." *Adams County Record v. Greater North Dakota Ass'n*, 529 N.W.2d 830, 834 (N.D.1995). Under the Code's Uniform Controlled Substances Act, the definition of the term "drug" includes those substances used in the "diagnosis, cure, mitigation, treatment, or prevention of disease in individuals," and those substances "other than food, intended to affect the structure or any function of the body of individuals." N.D.C.C. § 19–03.1–01(13)(b)(c). This definition encompasses over-the-counter medications such as Tylenol, Aleve, Motrin, Benadryl, and Tylenol PM, which are used to cure, mitigate, and threat different physical ailments, and all of which have an effect on an individual's bodily functions. Moreover, these medications are ingested for those purposes. As there is no discernible contrary intent by the legislature to use a different defini-

tion of the word "drugs" in N.D.C.C. § 39–08–01, we apply that definition found in N.D.C.C. § 19–03.1–01(13). Therefore, the statutory language regulating driving under the influence of drugs would include over-the-counter medications should they impair an individual's ability to drive safely.

[¶ 14] The potential for abuse of over-the-counter medications, and the potential for such substances to impair an individual's ability to drive, is a well-settled legal principle. *See*, Richard E. Erwin, *Defense of Drunk Driving Cases*, Vol. 1 § 11.04 (LexisNexis 2008) ("Many of the drugs that can affect driving safety are available as over-the-counter (OTC) preparations or prescription medications."). Indeed, this Court previously held a driver under the influence of cough medication could be convicted for driving under the influence. *Thornton v. North Dakota State Highway Com'r*, 399 N.W.2d 861, 863 (N.D.1987). In *Thornton*, the appellant argued cough syrup could not be considered an "intoxicating liquor" under N.D.C.C. § 39–08–01(1)(b), and thus he could not have been driving under the influence. *Id*. We disagreed, concluding a person would be under the influence of intoxicating liquor "if that individual has imbibed any liquid containing alcohol which intoxicates or impairs his ability to function adequately while operating a vehicle." *Id*. Likewise, a person can be under the influence of drugs even if the drugs taken by that individual were over-the-counter medications, so long as the drugs or substances had an intoxicating effect or impaired the person's ability to operate a vehicle. While Bitz argues her intake of over-the-counter medications is irrelevant to her ability to drive, the legislature's focus on limiting the defense to prescribed drugs, our rules of statutory interpretation, and our prior legal analysis in *Thorn-*

*ton* on the scope of intoxicating substances, indicate otherwise.

## III.

[¶ 15]  Viewing the evidence in a light most favorable to the verdict, we conclude a rational factfinder could have found Bitz guilty of driving under the influence of drugs or other substances.  We affirm the criminal judgment.

[¶ 16]  DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.